**STEEG PRINTING & PUB. CO. v.
AUTO-LEC STORES, INC.**

———

(January 11, 1932. Opinion and Decree.)

———

478

Benjamin Y. Wolf, of New Orleans, attorney for plaintiff, appellee.

Lemle, Moreno & Lemle, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. Plaintiff sues defendant for the sum of $2,736.66, the alleged balance due for printing and furnishing certain catalogues under the provisions of a written contract entered into by the parties on September 27, 1928.

The petition alleges that 326,351 catalogues were delivered to the defendant, for which there was due the sum of $14,-236.66, and that the defendant paid on account the sum of $11,500, leaving a balance of $2,736.66; that a dispute arose as to the correctness of the charges for the balance claimed and defendant declined to make further payment on account. The petition then sets forth in detail the respective items that make up the total amount claimed to be due under the contract.

The defendant answered admitting that it had entered into the contract with the plaintiff; that all the catalogues had been delivered; that a number of the items claimed, aggregating $903.47, were correct and due plaintiff, but denied the correctness of seven items claimed by the plaintiff in its petition.

There was judgment in favor of the plaintiff for the sum of $2,254.49 and defendant appealed to the Supreme Court. That court transferred the appeal to this court on the ground that it did not have jurisdiction, since the amount in dispute was less than $2,000. (Steeg Printing & Publishing Co. v. Auto-Lec Stores, Inc., 172 La. 565, 134 So. 746.) Plaintiff has answered the appeal asking that the amount of the judgment be increased to the sum of $2,686.66.

The record in this case is voluminous, involving a maze of figures and considerable conflicting testimony, but we shall endeavor to digest and present the issues in as simple and logical a form as possible.

We shall now discuss the respective disputed items according to the paragraph number given them in plaintiff's petition.

In paragraph 17 of the petition the plaintiff claimed that it was entitled to receive for original composition $7.90 per page, and, as the catalogue contained a total of 114 pages, including the index and the covers, there was due plaintiff the sum of $900.60. Defendant claims that there were in the catalogue 112 pages, which, at $7.90 a page, amounts to $884.80, and that as it furnished certain nickel-plated plates for the purpose of printing the covers, plaintiff is not entitled to recover for them. The trial judge was convinced by the evidence that the two covers should be classified as two pages of the catalogue and allowed $7.90 each for them. The fallacy in defendant's argument is that no allowance is made for the printing of the covers at all. The evidence shows that it took just as much effort and time to compose and print the covers as it did to compose and print the pages and, therefore, we conclude that the trial court properly allowed the sum of $900.60.

In paragraph 18 of the petition plaintiff claims the sum of $320 for furnishing 160 electrotypes at $2 per page. Defendant resists payment of this charge on the ground that the contract provides that electros shall be charged for as follows: "Electros, $2.00 per page," and claims that

the correct charge should have been $216, covering the final 108 printed catalogue pages. The trial court allowed the sum of $320.

What do the words "Electros, $2.00 per page" mean? From the testimony of Mr. Egerton, an expert in such matters, we gather that it is customary to use two or three electrotypes in printing an order of 326,000 catalogues, because they wear readily and cause the printing to become blurred, and that the number of electros used by the plaintiff was in keeping with the usual experience in fulfilling a contract of the proportions as the one under consideration. In the light of the evidence in the record as to the custom of the trade we have reached the conclusion that "Electros, $2.00 per page" means $2 per electrotype page and not $2 per printed catalogue page. We find that the sum of $320 is due.

In article 19 of the petition plaintiff claims $97 for furnishing fifteen bound copies of catalogue page proofs. This item is not covered by the contract and recovery is sought on a quantum basis. Defendant refused to pay this claim on the ground that a charge of $50 would be adequate and reasonable. Plaintiff undertook to prove by one of its employees that it required 44.54 hours, at the original charge of $2.50 an hour, to collect and bind these fifteen copies. Defendant attacks the accuracy of the testimony of this witness on the ground that other work was done during the time that he was supposed to have worked upon these bound copies. A careful consideration of the evidence on this point leads us to believe that it required that amount of time to do this work. The only evidence offered by defendant on this issue was the testimony of Mr. Stern, who stated that the defendant had gotten bids from two other printers who bid $46 and

$49, respectively, for similar work. The issue is not whether the defendant could have gotten the work done cheaper through competitive bidding, but whether or net the charge that the plaintiff has made, where there was no competitive bidding, is reasonable. The evidence supports the finding of the trial court in allowing the sum of $97 as fair and reasonable, and we see no reason to disturb it.

In article 20 of the petition the plaintiff claims the sum of $9.50 for mounting sixteen large cuts for catalogues. The only defense to this item is that these cuts were ordered through Grelle-Egerton Engraving Co., and not from the plaintiff, but the evidence shows that the plaintiff did furnish them and that a charge of $9.50 is reasonable. We note that this item is feebly contested. The trial judge allowed it and the record bears out his conclusion.

In article 21 of the petition plaintiff claims the sum of $1,243.67 for alterations and changes in composition made by defendant, alleging that it required 537.47 hours to make these changes and that it is entitled under the contract to charge $2.50 per hour therefor. Defendant denied that plaintiff was entitled to charge on the basis of changes for the services in question, but admitted that plaintiff was entitled to charge on the basis of new pages of composition at the contract price of $7.90 per page and, in addition thereto, for any changes and alterations in composition with reference to these new pages.

The record shows that the catalogue originally contemplated was to be printed in the fall of 1928. Plaintiff printed 112 pages furnished and approved by defendant and was prepared to print the catalogue in final form, but the defendant took

advantage of a clause in the contract and delayed the printing of it for 120 days.

During this interim defendant desired to make such drastic alterations and changes that out of the original 112 pages only 18 were retained intact. New pages of approved composition, consisting largely of material taken from the original 112 pages, were furnished by defendant amounting to 86 pages. These 86 pages, together with the 18 pages of the originally contemplated catalogue, amounted to 104 printed pages, and constituted the catalogue which plaintiff printed in final form for defendant in the spring of 1929.

It further appears that defendant had the right to compose as many new pages as it desired and to pay for them at the rate of $7.90 per page, as provided in the contract and also the right to discard as many pages as it wished and to have the accepted pages combined into a catalogue. Mr. Steeg, the president of plaintiff company, admits that plaintiff was obliged to print 96 or more new pages with the maximum number unlimited.

The modus operandi of printing the catalogue was for defendant to furnish the pages of composition. Plaintiff would then furnish defendant with a printed proof of the pages and defendant had a right to make such changes and alterations in the proof as it desired and return the corrected pages · to the plaintiff, and a second proof was run off. This proof was then submitted to defendant for approval and, upon it being approved and returned to plaintiff, it was considered to be in final form for printing.

There is no doubt that plaintiff was entitled to charge $7.90 per page for this work and, in addition thereto, for the number of hours it took to make the changes and alterations, at the rate of $2.50 per hour. But the controversy in reference to this subject is whether or not plaintiff is entitled to charge defendant, not only $7.90 per page for the original pages included in the 112-page catalogue, and for its time consumed in making such changes and alterations that defendant requested, but, in addition thereto, to charge defendant with reference to the 104-page catalogue on the basis of $2.50 per hour, since the second catalogue was composed in a large measure from the pages of the original catalogue.

It is clear that, if plaintiff charges for the 104-page catalogue on the basis of $7.90 per page as new pages, and for corrections thereto made at defendant's request, the bill would be considerably less than if it is to be calculated under the provision of the contract giving a right to plaintiff to charge $2.50 per hour for corrections and changes. The relevant clauses of the contract read as follows:

"Price: Composition, Seven Dollars Ninety Cents per page * * *."

"Changes and Corrections: All changes and corrections in composition made by you will be charged for at the rate of Two Dollars and Fifty Cents per hour."

The issue being which clause was applicable, expert testimony was offered by both sides to show the custom of the trade with reference to matters of this kind. The testimony of the experts is conflicting, those testifying for plaintiff being of an opinion favorable to its contention, and those appearing for defendant upholding its position. But Mr. William Pfaff, an expert for plaintiff, testified in effect that it was his appreciation and understanding of the custom of the trade that the charge

should be based on $7.90 per page for new pages and, in addition thereto, for any corrections and changes that might be made with reference to these new pages. These charges were to be, in addition to the charge of $7.90 per page for the 112-page catalogue, plus, of course, any corrections made thereto.

The judge a quo accepted the defendant's contention as sound and allowed for 104 pages at $7.90 per page, or $821.60 and, in addition thereto, for the alterations and changes, 100.92 hours at $2.50 per hour, or $252.30, making a total of $1,073.90.

But after carefully considering the record, we have reached the conclusion that the trial court fell into error in allowing for 104 pages for the new catalogue, because 18 pages of that catalogue were taken from the 112-page catalogue intact, and for which the district judge and we have already allowed the plaintiff to recover under paragraph 17 of the petition. Consequently, these 18 pages should be deducted from the 104-page catalogue and plaintiff would therefore be entitled to recover for 86 pages at the rate of $7.90 per page, or $679.40.

Counsel for defendant questions the correctness of the finding of the trial judge that 100.92 hours were spent in making the changes and corrections and argues tha the evidence does not justify an allowance of more than 64.73 hours. This contention is predicated upon the ground that defendant considers the testimony of Mr. Massavich, an employee of and witness for plaintiff, unreliable. Mr. Stern, a witness for defendant, testified that he made a compilation of the records furnished him by Mr. Massavich and that it showed a total of 74.24 hours.

The issue presented is one of fact, involving the credibility of the witness. The trial judge, who heard and saw the witness, was impressed by the statements furnished by him and his testimony, and we are unable to say that he was in error in accepting these statements and believing him. The trial court's finding of 100.92 hours at the rate of $2.50 per hour, or $252.30 for alterations and changes is, therefore, approved. But, due to the error of the trial judge in allowing for the 18 pages twice, we have deducted that amount and, therefore, reduced the amount of $1,073.90 to $931.70, and this item, as thus amended, is affirmed.

In paragraph 31 of the petition plaintiff claims the sum of $62.40 for storage charges on 104 pages of electrotypes from October 31, 1920, to December 31, 1929, at $0.20 per page. This charge is not covered in the original contract, but is claimed on a quantum meruit. The trial court disallowed this item and the appellee, in its answer to the appeal, asked that the amount be allowed.

From a reading of the contract it clearly appears that such a storage charge was not contemplated by the parties and that the plaintiff, in printing such a volume of catalogues and fulfilling its contract, would have to keep on its premises electrotypes for some considerable period of time. Furthermore, Mr. Stern, president of defendant company, testified that Mr. Steeg, president of plaintiff company, told him that there would be no charge for permitting these electrotypes to remain in plaintiff's place of business. His testimony on this point is undisputed and uncontradicted and, since plaintiff bore the burden of establishing clearly its claim, we are of the opinion that it has failed to do so.

Article 32. Under this article of the petition the plaintiff alleges that, by virtue of the provisions of the contract, it had until August 5, 1929, to deliver the catalogues, but delivered them on July 10, 1929, which exclusive of Sundays and holidays, would be twenty-one days ahead of the required delivery dates, and that, under the provisions of the contract, plaintiff was entitled to the sum of $50 per day as a bonus for each and every working day that the said deliveries antedated the date of delivery fixed by the contract, representing the sum of $1,050.

The defendant resists payment of the bonus on the ground, first, that the contract itself does not contemplate the payment of a bonus for anticipating the delivery of the new catalogue, or demurrage for delaying it, because it does not fix any date which shall be deemed the date of the final O. K. of proof, as was done in the case of the original catalogue, where October 28th was fixed as the date of final approval;

Second, that it was not contemplated by the parties that either the bonus or demurrage features should apply to the new catalogue, as is evidenced by their behavior in that the plaintiff delayed the work, did not compose ten pages a day, and did not return the proofs within forty-eight hours, as required by the provisions of the contract, and in that the defendant permitted plaintiff to violate the contract in the above respects without making any claim for penalty for demurrage;

Third, that the bonus should not be allowed because the plaintiff deliberately delayed certain parts of the work while it was printing up the biggest part of the catalogue, so that, when the final O. K. of the proof was given, plaintiff would be in a position to complete the catalogue within a few days and then claim a bonus, and that this amounted to perpetrating a fraud on the defendant;

Finally, in the alternative, that Saturday should be considered as a full day in computing the days that the deliveries antedated the time provided in the contract.

In the contract, under the heading of demurrage and bonus, we find the following provisions:

"In the event that the Steeg Printing & Publishing Company shall fail to make deliveries as per agreement hereinabove set forth they shall pay, by way of liquidated damages, the sum of Fifty and no/100 ($50.00) Dollars per day for each and every day thereafter that the said deliveries shall remain incomplete, and in the event that the Steeg Printing & Publishing Company shall complete deliveries prior to the delivery dates, then the said Auto Lec Stores, Inc. agree to pay to the said Steeg Printing & Publishing Company Fifty and no/100 ($50.00) Dollars per day as a bonus for each and every day that the said deliveries shall antedate the date of deliveries as fixed by said contract."

We also find the following provision in the contract with reference to deliveries:

"One hundred thousand catalogues to be delivered 30 working days after final O. K. of proofs and ten thousand daily thereafter, exclusive of Sundays and legal holidays."

It is undisputed that the final O. K. of proofs was furnished by the defendant to the plaintiff on May 30, 1929, and that the final lot of the catalogues was delivered to the defendant on July 10, 1929.

It is clear from the record that the plaintiff has made out a prima facie case entitling it to the bonus, unless it can be said that the defenses urged by the defendant are good.

Turning our attention to these defenses in the order above stated, we observe that the original contract between the parties was the agreement under which the catalogues were finally printed and delivered to the defendant. The provisions of this contract were carried out in toto, with neither party objecting to any of the provisions contained in it. The delay of 120 days, which the defendant requested, was in accordance with an express provision in the contract, so that it cannot be said that it was the intention of the parties to abandon the contract, or any part thereof. While it is true that no definite date was substituted for October 28th, the date fixing the time limit for final approval by defendant, nevertheless the provision "100,-000 catalogues to be delivered 30 working days after final O. K. of proofs and 10,000 daily thereafter, exclusive of Sundays and legal holidays" remained in the contract. In accordance with this provision of the contract the defendant finally O. K.'d the proofs on May 30, 1929, and the plaintiff then made deliveries of all of the catalogues by July 10, 1929. Counsel for defendant has failed to impress us that the parties practically abandoned these provisions of the contract and, therefore, we have reached the conclusion that the defendant's first contention is untenable.

Taking up the second defense, the record shows that both parties to the contract caused some delay with reference to the printing of the catalogues up to the time of the final O. K. on May 30, 1929. The defendant was guilty of delaying the furnishing of the composition to the plaintiff in order that the proofs might be printed, and the plaintiff was not complying with the provision of the contract requiring it to compose ten pages a day and return the proofs within forty-eight hours.

It also appears that both parties were lenient and indulgent to each other in respect to these delinquencies. While it may be true that the officers of the defendant company did not feel that the bonus or demurrage features of the contract were in existence, nevertheless there was nothing done by either party which would indicate an intention of waiving their respective rights under the clauses of the contract. Hence we are forced to the conclusion, as the trial judge was, that the parties were bound by their agreement in this respect.

In reference to the third defense there is nothing in the record to justify us in holding that the plaintiff was guilty of fraudulent conduct in printing large portions of the catalogues in final form, while other preliminary matters were pending with reference to other pages of the catalogue. The record does show that a considerable portion of the catalogue was being printed in final form, while the composition for new pages and proofs thereof were being mutually delayed by both parties, but without any protest from either side. It was only after the final O. K. on May 30, 1929, that the plaintiff rushed the completion of the catalogues and the deliveries thereof. In fact, since two officials of the defendant company testified they knew that the plaintiff was printing portions of the catalogue in final form, before the final O. K., it is difficult for us to realize how the defendant could consider that it was being defrauded when its officers had knowledge of what was going on. Their feeling that plaintiff would not invoke the bonus clause was unwarranted.

Under the fourth contention the plaintiff claims that Saturday should be considered one-half working day and one-half holiday

under the provisions of the contract and under Act 49 of 1928. Defendant contends that Saturday should be counted as a full or working day.

Section 1 of Act 49 of 1928 clearly provides that Saturday shall be a half-holiday in the city of New Orleans, but, while it is true that Saturday is designated as a half-holiday under the above act, can it be said that Saturday is not a full or working day within the meaning and intention of the parties when they placed the clause in the contract governing the time for making deliveries of the catalogues?

A provision for demurrage or a bonus is in the nature of a penalty, or award, respectively, and in such instances the language of the clause should be strictly construed against the party claiming under it. In short, the one making the claim should clearly show that the construction he contends for was the real intention of the parties and that he clearly comes within the provisions of the clause invoked. From a careful reading of the record we have reached the conclusion, as did our learned brother below, that it was not the intention of the parties to consider Saturday a half-holiday, but a full or working day. Consequently, the plaintiff's contention that it is entitled to twenty days is erroneous, because in its computation it considers Saturday a half working and half holiday. Counting Saturday as a full working day, plaintiff would be entitled to sixteen days, at $50 per day, or $800, as found by the trial court.

For the reasons assigned it is ordered, adjudged, and decreed, that the judgment of the district court be amended by reducing the amount allowed from the sum of $2,254 49 to the sum of $2,112.29, and, as thus amended, it is affirmed.